Turn to United States v. AECOM. Mr. Oleko and Mr. White, turn on your video. Mr. Oleko, go ahead, please. May it please the Court, the District Court's dismissal of relators' claims under Rule 12b-6 should be reversed for numerous reasons. I'd like to focus my time primarily on the materiality issue, but if the Court has questions about other issues, I'm happy to address them. First, the Court erred in finding that as a matter of law, relators failed to adequately allege materiality. The District Court determined that because there is no indication that the government refused to pay defendants or demanded repayment due to the labor billing, MHU, or property violations, defendants' misrepresentations were not material to the government's payment decision. However... Mr. Oleko, hold on one second. Mr. Bauer, I don't know if you could hear. We decided to move on to the second case, so why don't you just turn on your video. When we're done with this case, we'll come back to your case. I will, Judge. Thank you. All right. Mr. Oleko, go ahead. Thank you. But whether the government continued to pay claims despite its actual knowledge of defendants' noncompliance is not dispositive of the materiality inquiry under ESCOBAR. It's one of many factors relevant to the analysis. There's no dispute, though, right, that the government continued to pay even with knowledge of the noncompliance, and in fact, it even extended the contract? Is that right? The payments and continuation of the contract are not disputed. The government's actual knowledge is disputed, and that's very important because the factor really doesn't come into play at all when there's a dispute about the actual knowledge of the government. Further, when there is evidence of other materiality factors aside from that one materiality factor, the court can't grant a motion to dismiss. It must view the facts in the light most favorable to the plaintiff, and it's not permitted to weigh the factors on a motion to dismiss. The court's decision in Strzok is instructive. In Strzok, the court held where two factors, the express nature of the eligibility condition and the substantially- How long did this go on, the contract? I don't know the exact number of years, Your Honor, but- Almost nine years? Almost a decade, but it's still, at the time we filed the complaint- And the argument is that for all of that time, the government was unaware of these billing issues? The billing issues, the man-hour utilization issues, as well as the property issues, it was only aware of certain violations, but not the totality of the violations that are whatsoever, that AECOM had a policy of billing 11-hour days, 154-hour weeks, regardless of whether the workers actually performed that work or not. It was submitting bills to the government for that entire period. Further, while it might have had- Is it relevant that the government declined to intervene in the proceedings? Absolutely not. That's not a factor in the materiality analysis. The government's non-intervention is also not definitive. The government said at this time it's not intervening. Just parenthetically, the government did intervene with respect to two claims? Is that what I- Do I understand that? No, the government has actually not intervened with respect to- The government declined to intervene with respect to two claims initially, and then held its decision on the third issue. I'm just wondering about those two, what happened to them? They're still in the case, Your Honor. Has the government intervened on them? No. Okay. So the government has intervened in none of them? That's correct. Thank you. However, it has stated that it may still intervene pending discovery in the case, depending on what occurs. So that's still an open issue, at least as- But it has not chosen to intervene, at least not yet? That's right. That's right. Has the 154-hour week, which certainly seems rich, even in standards of a Wall Street law firm, was that justified on the basis that these people were living in Afghanistan, on what amounts to a military base, and they had no- They just never went home? I don't think our allegations necessarily support that. I mean, at a motion dismiss stage, that's what you base the decision on, and not extrinsic evidence. I don't believe there is consider it. I think the 154-hour week was instilled or imposed to up the man-hour utilization. There is a requirement by the government's contract that AECOM have man-hour utilization of 85% or 90% or higher. So AECOM was incentivized to keep everybody working as much as possible so that the man-hour utilization requirement was met. And it did so by arbitrarily having this 154-hour week timesheet requirement. So we believe that the allegations of the complaint allege that the decision to do that was because of the fraud in order to get more money from the involving extrinsic evidence. Let me ask you this. It involves several documents. Is there any dispute as to their authenticity? No, there's no dispute about the authenticity themselves. It's about whether or not the documents were integral to the complaint or part of the complaint. They certainly weren't attached to the complaint. Now, Pelley will argue that they were integral to the complaint, but many of them weren't referenced in the complaint at all. The argument is that we somehow... But some work. Yes. Well, there was a parts-only work order that was referenced in the complaint, for example. However, that reference to a work order doesn't then bring in all documents related to it, making those documents integral to the complaint. The work order itself might be integral, but that doesn't mean that every other document, including like an army memorandum or just other documents related to the work order itself is integral. And the court didn't just rely on the work order itself. It relied on an army memorandum and these other related documents. What about the audit documents? They are referred to in the complaint. Audit documents are, but the specific 2014, the September 2014 document is not integral to the complaint. And that document really disclosed nothing about the 154 billing hours, etc. But yes, the extrinsic evidence issues are critical here. I'm sorry. Give me one second. We see you and hear you. Thank you, Your Honor. So we believe, just like in Strzok, the reliance on those documents, it was erroneous and it should be reversed. The district court shouldn't have been... Do a summary judgment proceeding rather than a... That's our take, Your Honor. By weighing the different factors, which Apelli admitted during our briefing on a motion to reconsider that there was a weighing of factors that the district court did, that was just unpermitted at this stage of the proceeding when the allegations of the complaint must be taken as true and must be viewed in the most favorable light to the plaintiff. I see them over time. Your adversary argues that when a complaint, as yours does, alleges that a victim does not know a thing and the pleader, you, knows of a document, which is an audit document that reflects that they do know about it and whether the extent of that document is a different matter, that it is not really extrinsic. Well... And they actually, they took the opportunity to send you one of those documents so that you couldn't say, I didn't know about it. But that was, I believe that was before the Third Amendment complaint. That's right. So, but you've got to take into account the circumstances surrounding a Third Amendment complaint. So we submitted the original complaint, a First Amendment complaint, and a Second Amendment complaint, and then during the period of time when the defendants were producing documents, they ended up producing this audit. However, the Third Amendment complaint was not a amended complaint that allowed us to amend our materiality allegations. The parties agreed that the Third Amendment complaint would be directed only to, I think it was jurisdictional or venue allegations. Yes, it was jurisdiction. And so we weren't, this wasn't a wholesale amendment where we were going and digging through all the documents and making, you know, changes to our substantive allegations. This was a minor correction that the parties agreed to make. And so that case law that we weren't trying to hide away. On the other hand, if you had acquired a smoking gun between the second and third amended complaints, it's hard to believe that we wouldn't have taken advantage of the opportunity. Well, I'm not sure that the appellee would have agreed to allow us to amend those allegations. I'm not sure the court, the district court would have either. However, I also disagree that the 2014 DCAA report was a smoking gun. I didn't characterize it as a smoking gun. Okay. I understand your comment. I just wanted to make sure it's clear for the record. You have some time for rebuttal. Let's hear from the other side. Good morning, your honors. Ben White from Kaplan Hecker and Fink on behalf of the defendants appellees. Your honors, the district court correctly concluded that the relator's complaint failed to state a claim under the False Claims Act. And it was correct to conclude that Mr. Foreman simply failed to allege the core requirement that the Supreme Court announced in Escobar, but the relator identified a material false statement to the government. Now an argument today, my opponent has acknowledged that the government made every payment under the life of this contract, which has now been going on for 11 years. At the time he filed his complaint, it had been going on for about six years when he filed his initial complaint. So the only real question is government knowledge. What my opponent doesn't acknowledge is that the allegations in the complaint extend beyond just labor billing. They also cover man hour utilization rate and they cover property allegations that are indisputably referenced in the complaint. The government's knowledge is not only obvious from the face of the complaint, the government's knowledge is the evidence that the relator has come forward with to establish the falsity underpinning his False Claims Act claim. What he acknowledges as his evidence are corrective action reports submitted by the army to my client, identifying the failure to comply with the MHU rate. As to property, the relator acknowledges that there was a significant back and forth between the army, the Defense Contract Management Agency, the DODIG, acknowledging all of these property issues. The labor billing issues we submit were similarly as known to the government. Now I understand there is a question that the court was discussing with my opponent about the government's knowledge here being shown by extrinsic evidence. We would submit, your honors, that the DCAA report, which I think the relator can't dispute, fully discloses almost all of the labor billing non-compliances on which he rests his complaint, is perfectly, Judge Stanton committed no error in relying on it. Judge Stanton's reliance on that document was consistent with the wealth of precedent that this court has issued, making clear that plaintiffs are not free to pretend the documents of their possession that fundamentally undercut core allegations of their complaint don't exist. And here there's no dispute that this document undercuts the core allegations in Mr. Forman's complaint. Now my opponent takes issue with whether he was actually able to amend his allegations to include reference to the complaint, and we would submit, your honors, that it was clear that he could have. When Mr. Forman amended his second amended complaint to interpose his third amended complaint, it came after we about the labor billing deficiency that this audit report exposed. Your adversary points out that that third amended complaint was something he was privileged to do only in order to clean up certain jurisdictional and possibly venue issues. Your honor, two responses. One, the only reason we provided, so the third amended complaint was filed on consent. We agreed to it. Mr. Forman's counsel reached out to us after we submitted our pre-motion letter identifying a number of substantive deficiencies with the complaint and only asked to amend allegations as to personal jurisdiction. So our consent was simply, if you're going to file this, you simply have to adhere to the agreement we came to when you came to us. If Mr. Forman had came to us and said, counsel, I see you referenced this audit report in your pre-motion letter. We would like to revise our allegations to account for it, maybe provide some allegations that could get around it, and at the very least, clean up the allegations that pretend that it doesn't exist. Was that document turned over to them in the context of what practicing lawyers would call the document dump? No, your honor. Mr. Forman's counsel have repeatedly requested that we provide to him all the documents that we have provided to the Department of Justice during the span of their investigation. And we made those productions on a rolling basis so Mr. Forman was in possession of every document that my client had produced to the government. And we have produced the DCA report specifically well before he filed the third amended complaint. This isn't an instance, your honor, I believe you made a reference to this. It's not an instance in which we found a document that undercut some of his claims and just emailed it over to him. This was part of a broad production of a number of other documents that also refute a number of Mr. Forman's claims that he dropped on appeal. And your honor, apart from this back and forth between the filing of the second amended complaint and the third amended complaint is a bigger issue. Mr. Forman had not yet used up his amendment as a right by the time he filed his third amended complaint. There was nothing stopping him with under Rule 15 within 21 days of us filing that third amended complaint for him to as a right file a third amended complaint that accounted for the DCA report, cleaned up the allegations that were that were pretty clearly false that he continued to press even though he was in possession of these documents. The timing, I wanted to ask about the timing. So the lawsuit was filed in 2016. Was there were payments made after that, I gather, by the government? I'm sorry, repayments were made? Well, the government paid on the contract even after the complaint was filed is my question. That's right, your honor. As far as I understand, the government is still paying on the contract. Was the contract extended after the complaint was filed? Yes, your honor. The third amended complaint makes that clear. Not only was the contract extended after the complaint was filed, it was expanded. So for the payments after 2016 or during and after 2016, the government was aware of the allegations and still paid on the contract. That's correct, your honor. The Department of Justice was certainly aware of the allegations by the time the complaint was filed. When did the when did the Department of Justice first start investigating to decide whether to intervene? I'm not privy, your honor, to the negotiations that they later may have had with the Department of Justice prior to the filing of his complaint. I do know under the False Claims Act, the filing of the complaint triggers an investigation. That investigation was fairly robust. It took place over the span of a few years. The Department of Justice declined to intervene fairly early on on a number of Mr. Forman's claims. It then ultimately came to what we view as the plainly right decision and declined to intervene as to the entirety of Mr. Forman's claims. And just to clarify one point that Mr. Forman's counsel has raised, while the government did preserve its right when it declined to intervene in this case to ultimately enter back into the case, that right is provided to them by the statute. So there's no magic, there was no kind of minor declination here. They declined in full and chose to wash their hands of the matter, at least for present that they didn't participate in post-judgment briefing. They didn't participate in this appeal as the Department of Justice frequently does. Your Honor, if I may, I'd like to address a little further the matter, the issue of extrinsic evidence, just to make clear that the reliance, Judge Stanton's reliance on the 2014 DCAA report at the previous stage is precisely aligned with a number of precedents that we cite in our briefing. The principle, one of which Mr. Forman's counsel didn't rebut in our brief, and Judge Chen, I believe you might have some familiarity with that case, because you as a district court judge relied on materials that were provided by the defendant that were really integral to the complaint. They were emails that really undercut some of the actual merits of the claim that the plaintiff had brought. And Your Honor relied on them, it went up to appeal, and this court affirmed the reliance on those emails because they the parties' communications. Roots to make clear that the 2014 DCAA report is as integral, if not more, to the ability of Mr. Forman to proceed with his claims in this case, principally because they demonstrate, that audit report demonstrates with clarity that the auditor of the contractor, my client on this contract, had full awareness of all the labor billing allegations that Mr. Forman brings forth. Now, Mr. Forman's counsel does harp here and in his papers on a policy of 154 hour, to bill 154 hours each period, irrespective of hours worked. But Your Honors, I would direct the court to paragraph 81 of the relator's third amended complaint, which is the sole allegation supporting the existence of a 154 hour billing policy, irrespective of hours worked. Now, at best, that allegation supports the idea that the company was in fact billing 154 hours every bi-weekly period. But Judge Jacobs, as you acknowledge, as an actual matter of fact, that's largely how the contract worked. But what's important for present purposes on the motion to dismiss is that paragraph 81 does not contain the key allegation that the hours were not worked. All it states, at best, is that there was a policy to bill 154 hours. Now, this issue undercuts a large swath of, and I see my time is up, Your Honors, may I finish the thought? You can finish your thought, go ahead. Sure, it undercuts a core component of a large number of Mr. Forman's, the relator's allegations, which is that he never tithes almost any of his policy violations to an actual harm to the government and the contract. He does not state that any of these policy or procedure compliance issues ultimately meant that the hours reflected in whatever billing mechanism he planned to follow wasn't worked. And that's a key obstacle for the relator to overcome, because it fundamentally undercuts the materiality of the non-compliance. Thank you. Mr. Oleko, you have some rebuttal time. Thank you, Your Honor. So I wanted to, Appelli made a couple contradictory statements during his argument. First, he said the DCAA 2014 report disclosed almost all of labor allegations. Then, near the end, I heard him say that it disclosed all of them. Well, I don't think it did disclose all of them. I'm pretty sure it didn't disclose the 154-hour policy. And that paragraph he's focusing on in the Third Amendment complaint about the 154 policy is an isolated paragraph in a complaint that alleges that workers were sleeping during working hours, that they were engaging in leisure activities. This is, you know, you can't just look at this one paragraph in isolation. You have to look at it in the totality of the complaint and take all inferences in the light most favorable to the plaintiff. I don't believe Appelli's are fairly doing that here. I mean, it's not surprising that when you have a contract that goes on for 11 years that there will be instances of non-compliance, non-performance. The question is overall, you know, and the timing is telling. You know, the government was put on notice of the allegations in 2016 and yet continued to pay on the contract, continue the contract, even though it was put on notice of these things. Oh, that's a good point, Your Honor, and I just wanted to spell that that has any relevance to this issue whatsoever. Under ESCOBAR 2, the First Circuit decision following ESCOBAR 1, the Supreme Court's decision clearly stated that mere awareness of allegations concerning non-compliance with regulations is different from knowledge of actual non-compliance. So the fact that the government knew about... What's the difference between awareness and knowledge? You're arguing that there's something different between awareness and knowledge? No, Your Honor, difference between allegations and actual non-compliance. So the fact that we filed a complaint, which we believe is true, of course, doesn't mean that the government necessarily understands that there's evidence to back all that up. So the government's waiting to see whether or not there is evidence of actual non-compliance, which will come out during, you know, the course of the case if the court does remand it. I see I'm out of time, so unless you guys have any questions, Your Honors have any questions, I'd like to conclude. Thank you. The court will reserve decision. Thank you both.